## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRESCO CAPITAL, INC.
200 Owen Parkway Circle
Carter Lake, IA  51510

      Plaintiff,

v.                                                           CIVIL DIVISION

ULUGHBEK USMANALIYEV,                                        CASE NO.
403 Audubon Terrace
Philadelphia, PA  19116

DEMIR TRANS, LLC
403 Audubon Terrace
Philadelphia, PA  19116

JOHNSTON LEWIS ASSOCIATES, INC.
500 New King Drive, Suite 210
Troy, MI 48098

DURHAM INSURANCE GROUP, INC.
1201 Bridgetown Pike
Feasterville, PA  19053

and

PROGRESSIVE INSURANCE COMPANY
6300 Wilson Mills Road
Mayfield Village, OH  44143

      Defendants.

## **<u>COMPLAINT</u>**

AND NOW, comes the Plaintiff, Cresco Capital Inc., by and through its counsel,

Michael F. Nerone, Esquire and Pion, Nerone, Girman, Winslow & Smith, P.C. and files this

Complaint, in support of which it avers the following:

1.      Plaintiff, Cresco Capital, Inc. ("Cresco") is a Minnesota corporation which

maintains its principle place of business in Iowa.

2.     Defendant, Ulughbek Usmanaliyev, is an adult individual, who, based upon information and belief resides in Philadelphia, Pennsylvania.

3.     Defendant, Demir Trans LLC, based upon information and belief is a Pennsylvania limited liability company which maintains its principle place of business in Philadelphia, Pennsylvania.

4.     Defendant, Johnston Lewis Associates, based upon information and belief is a Michigan corporation which maintains it principles pace of business in Michigan.

5.     Defendant, Durham Insurance Group Inc., based upon information and belief is a Pennsylvania corporation which maintains its principle place of business in Feasterville, Pennsylvania.

6.     Defendant, Progressive Insurance Company, based upon information and belief is an Ohio corporation with maintains its principle place of business in Mayfield Village, Ohio.

7.     Based upon information and belief, Defendant Usmanaliyev owned and operated Defendant Demir at all pertinent times.

8.     Defendant Demir has been and is a federally licensed and authorized motor carrier.

9.     On or around June 22, 2017, Defendant Usmanaliyev entered into a rental agreement with Cresco through which he leased a 2017 Volvo tractor bearing VIN 4V4NC93H0HN982728. A true, correct and complete copy of the Rental Agreement is attached hereto as Exhibit A.

10.    Pursuant to the Rental Agreement, Defendant Usmanaliyev was obligated to maintain insurance coverage on the 2017 Volvo tractor at all times throughout the duration of the rental term.

11.     Defendant Usmanaliyev was also required to name Cresco as a loss payee/lienholder and an additional insured on the insurance coverage pertaining to the 2017 Volvo tractor.

12.     At the time the Lease Agreement was entered into Defendant Usmanaliyev was leased on to carry with JZ Express, DOT number 2934070.

13.     On or about June 21, 2018, a new insurance policy covering the truck was started with Great West Casualty Co.

14.     On or about August 3, 2018, Cresco first received notice of the new insurance coverage with Great West Casualty Co.

15.     On or about August 7, 2018 Cresco received Physical Damage renewal from Johnson Lewis on behalf of Great West Casualty Co.

16.     Unbeknownst to Cresco, on or about August 28, 2018 Great West Casualty Co. insurance was cancelled.  Great West Casualty claimed that notice was mailed to the insured on August 28, 2018.  Cresco never received notification.

17.     On or about November 27, 2018 Truck was added to Demir Trans Insurance policy. Again, no notification was sent to Cresco about the change in insurance.

18.     Based upon information and belief, Defendants Usmanaliyev and Demir procured the requisite insurance coverage through Defendant Durham with Defendant Progressive.

19.     Based upon information and belief, Defendants Usmanaliyev and Demir purchased Progressive Policy No. 081892920, which Policy had an effective term from September 20, 2018 to September 20, 2019 and named Cresco as an Additional Insured, Certificate Holder and Loss Payee/Lienholder. The above referenced 2017 Volvo tractor was added to the Policy as a covered auto effective November 27, 2018. The tractor had a stated value of $157,000 when it was added to the Policy.

20.     It was known to Defendants Durham and Progressive that thirty days advance notice was required to be given to Cresco if any components of the coverage were canceled or removed before the expiration date of the Policy.

21.     Defendants Durham and Progressive supplied Cresco with a Certificate of Insurance on or about November 27, 2018 which indicated that the above referenced Policy included Collision coverage subject to a $1,000 deductible, that Cresco was a Certificate Holder, an Additional Insured/Lienholder and that Cresco would "be notified in the event of a mid-term cancellation."

22.     Unbeknownst to Cresco, Defendants Durham and Progressive removed the subject 2017 Volvo tractor from the Policy on or about February 11, 2019.

23.     Defendants Usmanaliyev's and Demir's removal of coverage on the subject tractor was in breach of the Rental Agreement.

24.     Further, although Defendants Durham and Progressive had represented that advance actual notice would be provided to Cresco if changes were made to the Policy before expiration of the Policy term, neither Defendant Durham nor Defendant Progressive provided notice to Cresco that coverage had been removed for the subject tractor, until sometime after March 7, 2019.

25.     On or about March 3, 2019, the 2017 Volvo tractor was involved in a motor vehicle accident resulting in the vehicle being deemed a total loss (or alternatively incurring repair costs near or exceeding its value ).

26.     Cresco made a claim for the damage to the subject tractor following the accident which was denied because coverage had been canceled for the tractor on or about February 6, 2019.

4

27.     The damage to the tractor resulting from the March 7, 2019 accident would have been covered by the Policy, had the tractor not been removed from the Policy prior to the loss.

28.     In conjunction with its claim, Cresco communicated with Defendants Durham and Progressive. Among other things, both of these Defendants confirmed that they were obligated to notify Cresco in advance of cancellation of the coverage for the subject tractor.

29.     Despite demands to all of the Defendants, Cresco has not yet been paid for the losses associated with the damage to its tractor.

## COUNT I
### Cresco v. Usmanaliyev and Demir

30.     Cresco incorporates herein by reference the averments contained in Paragraphs 1 through 29 above, as if the same were set forth herein at length.

31.     Defendants Usmanaliyev and Demir were contractually obligated to maintain insurance coverage on the subject tractor throughout the duration of the rental term, including collision coverage and/or physical damage coverage which would fully compensate Cresco for any damage to the vehicle in the event of an accident.

32.     Defendants Usmanaliyev and Demir breached their above described contractual obligations by failing to maintain the requisite insurance coverage on the tractor for the duration of the rental term.

33.     As a direct and proximate cause of Defendants Usmanaliyev's and Demir's breach of the Rental Agreement, Cresco has suffered losses and damages of approximately $157,000.

WHEREFORE, Plaintiff, Cresco, respectfully requests that judgment be entered in its favor against Defendants Usmanaliyev and Demir in an amount in excess of the jurisdiction limits of this Court, together with interest and costs.

### COUNT II
### Cresco v. Durham

34.     Cresco incorporates herein by reference the averments contained in Paragraphs 1 through 33 above, as if the same were set forth herein at length.

35.     Defendant Durham misrepresented that notice would be given to Cresco in the event coverage on the 2017 Volvo tractor was canceled prior to the expiration date of the Policy.

36.     Defendant Durham failed to give Cresco any notice that insurance coverage on the 2017 Volvo tractor was canceled on February 6, 2019, despite having knowledge and participating in the cancellation of such coverage.

37.     As a direct and proximate cause of Defendant Durham's misrepresentation and failure to provide notice to Cresco of the cancellation of coverage for the 2017 Volvo tractor, Cresco has suffered losses and damages of approximately $157,000.

WHEREFORE, Plaintiff, Cresco, respectfully requests that judgment be entered in its favor against Defendant Durham, in an amount in excess of the jurisdiction limits of this Court, together with interest and costs.

### COUNT III
### Cresco v. Progressive

38.     Cresco incorporates herein by reference the averments set forth in Paragraphs 1 through 37 above, as if the same were set forth herein at length.

39.     Defendant Progressive represented that it would provide notice to Cresco in the event of a mid-term cancellation of the coverage on 2017 Volvo tractor.

40.     Defendant Progressive failed to provide notice to Cresco of the mid-term cancellation of the coverage on the 2017 Volvo tractor.

41.     Defendant Progressive is estopped from asserting cancellation of the coverage as a defense and is obligated to pay Cresco's claim for the damage to the 2017 Volvo tractor.

42.     Defendant Progressive has refused to pay Cresco's claim for the damage to the 2017 Volvo tractor.

43.     As a direct and proximate result of Defendant Progressive's refusal to pay Cresco's claim, Cresco has suffered losses and damages of approximately $157,000.

WHEREFORE, Plaintiff, Cresco, respectfully requests that judgment be entered in its favor against Defendant Progressive, in an amount in excess of the arbitration jurisdiction limits of this Court, together with interest and costs.

## COUNT IV
### Cresco v. Progressive

44.     Cresco incorporates by reference the averments set forth in paragraphs 1 through 43 above, as if the same were set forth herein at length.

45.     Cresco was an insured under the above referenced Policy.

46.     Defendant Progressive promised and represented that it would provide actual notice to Cresco in the event of a mid-term cancellation of the coverage on the 2017 Volvo tractor.

47.     Defendant Progressive failed to provide any actual notice to Cresco of the February 6, 2019 mid-term cancellation of the coverage on the 2017 Volvo tractor.

48.     After the occurrence of the above referenced motor vehicle accident, Cresco advised Defendant Progressive that it had not been provided notice of the February 6, 2019 mid-term cancellation of coverage on the 2017 Volvo tractor.

49.     Defendant Progressive possesses no evidence that Cresco received actual notice of the mid-term cancellation of coverage on the 2017 Volvo tractor.

50.     Defendant Progressive has denied Cresco's claim for damage to the 2017 Volvo tractor in bad faith.

51.     As a direct and proximate cause of Defendant Progressive's bad faith, Cresco has suffered losses and damages associated with the subject tractor, the costs of being compelled to pursue litigation to enforce its rights, as well as lost revenue from the subject tractor.

WHEREFORE, Cresco respectfully requests that judgment be entered in its favor against Progressive and that the Court award all damages permissible under 42 Pa.C.S.A. §8371, including but not limited to counsel fees, punitive damages and interest at the statutorily proscribed rate.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

PION, NERONE, GIRMAN, WINSLOW & SMITH, P.C.

By: _Mike Nerone_____

Michael F. Nerone
PA ID # 62446
1500 One Gateway Center
420 Fort Duquesne Boulevard
Pittsburgh, PA  15222
412-281-2288
412-281-3388 (fax)
mnerone@pionlaw.com

Counsel for Plaintiff, Cresco Capital, Inc.

Date: January 22, 2020_____

## COMMERCIAL LEASE AGREEMENT



**EXHIBIT A**

**LESSOR:**     CRESCO CAPITAL INC.
**LESSEE:**     Ulughbek Usmanaliyev
**VEHICLE:**   4V4NC9EH0HN982728; See Schedule A-2 for detail
**LEASE NO.:** 10107751

**LEASE TERMS:**

| | |
|---|---|
| Commencement Date of Agreement: | 06/22/2017 |
| Lease Term (number of months): | 48 months |
| Down Payment: | $10,000.00 |
| End of Term: | Fair Market Value:  See Section 7 |
| Monthly Payment: | $2550.00 plus applicable taxes, if any |
| First Payment Date: | 08/06/2017 |
| Monthly Due Date: | 6th |
| Mileage Plan: | 66,000 semi-annually |
| Excess Mileage Charge: | $0.12 per mile; to be deducted from Fair Market Value |

### TERMS AND CONDITIONS

This Commercial Lease Agreement (the "Agreement") has been written in plain English.  The words "you" and "your" herein refer to the Lessee listed above.  The words "we", "us" and "our" refer to the Lessor listed above.

1.  Contract for Leasing; Term and Rent.  We agree to lease to you and you agree to lease from us the truck, trailer, and/or other vehicle identified on Schedule A-2, together with all additional equipment and accessories thereon (collectively the "Vehicle") for the monthly rent and months  stated above (the "Lease Term").  You understand that you have acquired no right, title, option or interest in or to the Vehicle and agree that you shall not assert any claim in or to an interest in the Vehicle other than that of a lessee.  You shall at all times, at your sole expense and cost, keep the Vehicle free from all levies, attachments, liens and encumbrances and other judicial process.  You shall give us immediate written notice of any action taken by a third party which may jeopardize our ownership rights in any Vehicle and shall indemnify and hold us harmless, including attorney fees and costs, from any loss or damages caused by your actions.

You agree to take delivery of the Vehicle at our business location identified on Schedule A-2.  This Agreement will begin on the date when the Vehicle is accepted by you and the Vehicle will be deemed irrevocably accepted by you upon the delivery to us of a signed Acceptance Certificate as set forth in Schedule C.  The down payment specified above is due upon acceptance of the Vehicle and is non-refundable.

In addition to Monthly Rent, you agree to pay to us from time to time any fees, expenses and charges which have been paid by us on your behalf, including without limitation, the cost of any warranty coverage on the Vehicle you elect to purchase ("Additional Charges").

This Agreement cannot be canceled and you agree that all your obligations are unconditional.  Upon your acceptance of the Vehicle, and to the extent permitted by law, you agree to waive any rights to reject the Vehicle and repudiate this Agreement.

2.  Disclaimer of Warranties; Limitation on Liability.  We are leasing the Vehicle to you "AS IS".  WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE MERCHANTABILITY AND PERFORMANCE OF THE VEHICLE OR THE VEHICLE'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW OR THE VEHICLE'S

DESIGN OR CONDITION, ITS CAPACITY OR DURABILITY, THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN THE MANUFACTURE OR ASSEMBLY OF THE VEHICLE, OR THE CONFORMITY OF THE VEHICLE TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER RELATING THERETO, OR PATENT INFRINGEMENTS, AND WE HEREBY DISCLAIM ANY SUCH WARRANTY. WE ARE NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE VEHICLE, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF. You acknowledge that we do not manufacture the Vehicle, we do not represent the supplier(s) of the Vehicle and you have selected the Vehicle and the supplier(s) based on your own judgment. You agree not to make any claim for any reason against us for consequential, special, punitive, direct, incidental or indirect damages or claim of any character, including, without limitation, loss of use of production facilities or equipment, loss of profits, property damage or lost production, whether suffered by you or any third party. You acknowledge you have been advised that you may have rights against the supplier(s) of the Vehicle and that you should contact each supplier for a description of any such rights. You have read, understood and agreed to the LESSEE'S GUIDE attached as Schedule D and voluntarily signed such document.

3. Taxes and Assessments. Fees, taxes, governmental assessments and charges (including interest and penalties) of whatever nature, by whomever payable (other than federal, state or local taxes levied on our net income) levied, assessed or incurred during the Lease Term in connection with the Vehicle including, but not limited to, sales and use tax, personal property tax, the titling and registration of the Vehicle in all jurisdictions required by the nature of your business and the purchase, sale, ownership, rental, use, inspection and operation thereof (collectively, "Taxes"), shall be paid by you. In the event any of said fees, Taxes, governmental assessments and charges shall have been paid by us, or if we are required to collect or pay any thereof, you shall reimburse us therefore, upon demand, as Additional Charges. You agree to keep or cause to be kept and made available to us any and all necessary records relative to the use of the Vehicle and/or pertaining to the aforesaid fees, Taxes, governmental assessments and charges. Your obligations under this Section shall survive the expiration or termination of this Agreement. Upon request by us, you shall provide us with copies of satisfactory documentation and proof of payment of such Taxes. You shall indemnify and hold harmless us from and against any such Taxes, including attorney fees, and any penalties and interest thereon, and any other liabilities and damages that we may incur arising out of the failure of you to pay when due such Taxes. The indemnity and covenants set forth herein shall continue in full force and effect and shall survive the expiration or earlier termination of the Agreement. You also agree to comply with Schedule A-1, TRAC Certification.

4. Risk of Loss and Insurance. You are responsible for any loss or damage to the Vehicle and/or caused by the Vehicle until all of your obligations under this Agreement have been fulfilled. You agree to immediately notify us of any such losses or damages and of any insurance claims pertaining to the Vehicle. If the Vehicle or any portion of the Vehicle is missing, stolen or damaged, you will, at our option and at your expense, promptly repair the Vehicle to our satisfaction, replace the Vehicle or pay to us any default remedies described under Section 8 of this Agreement. In no event shall there be any abatement of Monthly Rent during any period that the Vehicle is stolen or missing or during the time required for any repair, adjustment, servicing or replacement of the Vehicle.

You shall procure and maintain insurance in such amounts and upon such terms and with such companies as we may approve, during the entire Lease Term and until the Vehicle has been returned to, and accepted by, us in the condition required by this Agreement, at your expense, provided that in no event shall such insurance be less than the following coverages and amounts: (a) Worker's Compensation and Employer's Liability Insurance, in the full statutory amounts provided by law; (b) Comprehensive General Liability Insurance including product/completed operations and contractual liability coverage, with minimum limits of $1,000,000 each occurrence, and Combined Single Limit Body Injury and Property Damage, $1,000,000 aggregate,; and (c) All Risk Physical Damage Insurance, including earthquake and flood, on each item of Vehicle, in an amount not less than the greater of the Fair Market Value of the Vehicle or (if available) its full replacement value, and to the

extent such policy is written for actual cash value, you must also procure GAP coverage to ensure full payoff of the Lease in the event of loss. You are to carry non-trucking liability policy for when you are "not trucking" along with providing an auto/general liability policy from your carrier. We will be included as an additional insured as our interest may appear and as a loss payee on the physical damage insurance policies. Such policies shall be endorsed to provide that the coverage afforded to us shall not be rescinded, impaired or invalidated by any act or neglect by you. You agree to waive your right and your insurance carrier's rights of subrogation against us for any and all loss or damage. In addition to the foregoing minimum insurance coverage, You shall procure and maintain such other insurance coverage as we may require from time to time during the Lease Term.

All policies shall be endorsed or contain a clause requiring the insurer to furnish us with at least 30 days' prio written notice of any material change, cancellation or non-renewal of coverage. Upon execution of this Agreement, you shall furnish us with a certificate of insurance or other evidence satisfactory to us that such insurance coverage is in effect, provided, however, that we shall be under no duty either to ascertain the existence of or to examine such insurance coverage or to advise you in the event such insurance coverage should not comply with the requirements hereof. In case of your failure to procure or maintain insurance, we may at ou option obtain such insurance, the cost of which will be paid by you as Additional Charges. You hereby irrevocably appoint us as your attorney-in-fact to file, settle or adjust, and receive payment of claims under any such insurance policy and to endorse your name on any checks, drafts or other instruments on payment of such claims. You further agree to give us prompt notice of any damage to or loss of, the Vehicle, or any part thereof.

5.  Use of Vehicle. You agree to use the Vehicle only for business purposes, for the purpose for which it was designed, only in the United States, by qualified personnel, and in compliance with its intended use, any applicable laws and any license agreement pertaining to the Vehicle. You agree to keep the Vehicle at an appropriate and safe location, and you agree to promptly inform us of such location in advance. Subject to Section 7 of this Agreement, you agree, at your expense, to return the Vehicle to us at the end of the Lease Term to our address above, or to such address as we may designate in writing, in the same condition as it was delivered to you except for ordinary wear and tear. You agree that we are not responsible for any losses or injuries caused in connection with the Vehicle. You agree to indemnify us, including any attorney fees we incur, for and, at our option and your expense, defend us against any claims, suits and actions, including negligence and strict liability, whenever made for losses or injuries related to the Vehicle.

6.  Maintenance; Inspection; Loss and Damage. During the Agreement Term, You shall, unless we shall otherwise consent in writing: (a) at your sole expense, service, repair, overhaul and maintain each item of Vehicle in the same condition as when received ordinary wear and tear excepted, in good operating order, consistent with prudent industry practice (but, in no event less than the same extent to which you maintain other similar equipment in the prudent management of its assets and properties) and in compliance with all applicable laws, ordinances, regulations, and conditions of all insurance policies required to be maintained by you under the Agreement and all manuals, orders, recommendations, instructions and other written requirements as to the repair and maintenance of such item of Vehicle issued at any time by the vendor and/or manufacturer thereof; (b) maintain conspicuously on any Vehicle such labels, plates, decals or other markings as we may reasonably require, stating that we are owner of such Vehicle; (c) furnish to us such information concerning the condition, use and operation of the Vehicle as we may request; (d) permit any person designated by us to visit and inspect any Vehicle and any records maintained in connection therewith, provided, however, that the failure of us to inspect the Vehicle or to inform you of any noncompliance shall not relieve you of any of its obligations hereunder; (e) if any Vehicle does not comply with the requirements of this Agreement, you shall, within 30 days of written notice from Us, bring such Vehicle into compliance; (f) not use any Vehicle, nor allow the same to be used, for any unlawful purpose, nor in connection with any property or material that would subject us to any liability under any state or federal statute or regulation pertaining to the production, transport, storage, disposal or discharge of hazardous or toxic waste or materials; and (g) make no additions, alterations, modifications or improvements (collectively, "Improvements") to any item of Vehicle that are not readily removable without

causing material damage to such item of Vehicle or which will cause the value, utility or useful life of such item of Vehicle to materially decline. If any such Improvement is made and cannot be removed without causing material damage or decline in value; utility or useful life (a "Non-Severable Improvement"), then you warrant that such Non-Severable Improvement shall immediately become our property upon being installed and shall be free and clear of all liens and encumbrances and shall become Vehicle subject to all of the terms and conditions of the Agreement. All such Improvements that are not Non-Severable Improvements shall be removed by you prior to the return of the item of Vehicle hereunder or such Improvements shall also become the sole and absolute property of us without any further payment by us to you and shall be free and clear of all liens and encumbrances whatsoever. You shall repair all damage to any item of Vehicle caused by the removal of any Improvement so as to restore such item of Vehicle to the same condition which existed prior to its installation and as required by this Agreement.

You hereby assumes all risk of loss, damage or destruction for whatever reason to the Vehicle from and after the earlier of the date (i) on which the Vehicle is ordered or (ii) we pay the purchase price of the Vehicle, and continuing until the Vehicle has been returned to, and accepted by us in the condition required herein upon the expiration of the Lease Term. If during the Lease Term all the Vehicle shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of such item, You shall immediately pay to us an amount equal to the Fair Market Value of such Vehicle, as of the next following Rental Payment Date.

7.   Termination, Settlement and Purchase. At any time, upon not less than ten (10) days prior written notice to us and provided no Event of Default is then continuing, you may surrender the Vehicle to us. In connection with any such surrender, you shall pay an amount equal to the sum of all remaining Monthly Rent due through the end of the Lease Term plus all Additional Charges which are accrued and unpaid or otherwise due through the Lease Term. Upon expiration of the Lease Term, you shall return the Vehicle (to the extent not previously returned) as contemplated herein.

Following such surrender, we will either retain the Vehicle or sell the Vehicle through our standard wholesale sales procedure for the highest bona fide bid received and open at time of sale.

If the amount received by us on account of such sale or the highest bona fide bid received and open at the time of crediting where such Vehicle is retained by us, as appropriate, net in either instance of a handling charge of $500 and our cost of sale, including sales or auction commission costs and costs of cleaning, repairing or transporting said Vehicle, exceeds the Vehicle's Fair Market Value as set forth above (plus any Monthly Rent and Additional Charges due and payable pursuant to this Section 7), you shall have no further settlement obligation to us as to such Vehicle and you will receive a rental credit equal to such excess. If such net amount is less than such Vehicle's Fair Market Value, you shall pay us the deficiency.

As an alternative to surrender of the Vehicle, you may purchase the Vehicle at the end of the Lease Term, upon not less than ten (10) days prior written notice to us and provided no Event of Default is then continuing for its Fair Market Value (defined below), plus any applicable taxes and any Monthly Rent and Additional Charges due and payable pursuant to this Section 7. Fair Market Value is defined as $25,500 which shall be paid in 10 equal monthly installments of $2,550 beginning on the first day of the month when the Agreement ended and continuing on the same day of each consecutive month until $25,500 has been paid in full. Failure to make such payment when due shall result in an Event of Default and we may enforce any and all applicable remedies under Section 8 as described therein. For the purposes of this provision only, Monthly Rent in Section 8 shall be defined as Fair Market Value less any payments made as required in this paragraph after the Lease Term has expired. Any such purchase of the Vehicle shall be "AS IS, WHERE IS" and we make no warranties of any kind.

The following return provisions shall apply to all Class 8 Tractors as part of the Vehicle subject to Agreement:

All manuals, maintenance records, maintenance jackets and repair orders will remain with the Vehicle.

All exteriors will be free of damage with paint in good condition and exteriors free of cuts, tears, or rips.

There will be no missing glass or damage to glass such as, but not limited to, cracks, chips, or breaks.

All lights and all accessories will be in working order.

All air and fluid lines will be free of leaks, cuts or cracks.

Transmissions, clutches and drive trains will function with no slipping or grabbing and the rear axle must also meet the manufacturer's minimum specifications under full load.

Brake linings will have a minimum of 50% remaining wear, and must hold the unit without fading, as specified by the original manufacturer.

All operating, mechanical and electrical components of the Vehicle, including but not limited to, radiators, cooling systems, springs, coils, radios, heaters and air conditioners, must be able to perform their function properly and as originally intended.

Tires will be matched by generic type and tread design and have at least 50% of tread life remaining on each tire, with no flats, D.O.T acceptable, no dry rot on sidewalls, and rims or disc wheels shall have no split base rims. No tires will be recaps at the time of return.

There will be no structural damage to the Vehicle. Each engine mileage must have at least 50% remaining mileage until the next manufacturer's scheduled "in-frame" overhaul, and be capable of meeting manufacturer's minimum operation specifications while under full load and meet the current smoke emission standards and be free of oil leaks. Determination of whether or not these specifications are met shall be made by subjecting each engine to crankcase and manifold pressure tests as well as a road test, all of which must be performed by a factory authorized service center or Agreement maintenance facility.

All signs and markings identifying a unit of Vehicle as part of a fleet or a specific organization shall be removed and repainted in a workmanlike manner to blend with the rest of the unit. Size and regulatory markings are to remain on the unit.

Vehicle will meet the rules and regulations of the Department of Transportation, Interstate Commerce Commission, and any other applicable regulatory inspection requirements.

Such other operational, maintenance or repair items as are reasonably necessary to necessary in the sole, reasonable judgment of us.

8. Defaults and Remedies. You are in default under this Agreement if (each an "Event of Default"): (a) you shall fail to make any payment, of Monthly Rent, Additional Charges or otherwise, under this Agreement (or any other lease with us either now existing or in the future) within 10 days of the date when due; or (b) you shall fail to obtain or maintain any of the insurance required under this Agreement; or (c) you shall fail to perform or observe any covenant, condition or agreement under this Agreement (or any other lease with us either now existing or in the future), and such failure continues for 10 days after notice thereof to you; or (d) you shall

default in the payment or performance of any indebtedness or obligation to us or any affiliated person, firm o entity controlling, controlled by or under common control with us, under any loan, note, security agreement lease, guaranty, title retention or conditional sales agreement or any other instrument or agreement evidencin, such indebtedness with us or such other affiliated person, firm or entity affiliated with us; or (e) an, representation or warranty made by you herein or in any certificate, agreement, statement or document hereto o hereafter furnished to us in connection herewith, including without limitation, any financial informatioi disclosed to us shall prove to be false or incorrect in any material respect; or (f) death or judicial declaration o incompetence of you, if an individual; or (g) the commencement of any bankruptcy, insolvency, arrangement reorganization, receivership, liquidation or other similar proceeding by or against you or any of your properties o businesses, or the appointment of a trustee, receiver, liquidator or custodian for you or any of your properties o business, or if you suffer the entry of an order for relief under Title 11 of the United States Code; or the makin, by you of a general assignment or deed of trust for the benefit of creditors, or (h) you shall default in an, payment or other obligation to any third party and any applicable grace or cure period with respect thereto ha: expired; or (i) you shall terminate your existence by merger, consolidation, sale of substantially all of its assets o otherwise; or (j) if you are a privately held entity, and more than 50% of your voting capital stock or othe equivalent ownership interest, or effective control of such stock or interest issued and outstanding from time tc time, is not retained by the holders of such stock or interest on the date of this Agreement; or (k) if you are ; publicly held corporation, there shall be a change in the ownership of your stock such that you are no longe subject to the reporting requirements of the Securities Exchange Act of 1934, or no longer have a class of equit, securities registered under Section 12 of the Securities Act of 1933; or (l) there has been a material adverse change in your financial condition or your ability to make any payment hereunder promptly when due o otherwise comply with the terms of this Agreement or any other agreement between us is impaired; or (m) you engage in clearly evasive behavior including but not limited to by (1) disconnecting telephones and/or changin, phone numbers, (2) refusing to answer or respond to phone calls from us, (3) failing to notify us of any change ii your address, (4) changing carriers and failing to notify us of the change; or (n) any event or condition set forth ii subsections (b) through (l) of this Section 8 shall occur with respect to any guarantor or other person responsible in whole or in part, for payment or performance of this Agreement.

You shall promptly notify us of the occurrence of any Event of Default or the occurrence or existence of any event or condition which, upon the giving of notice of lapse of time, or both, may become an Event of Default.

Upon the occurrence of an Event of Default, we may, at our option, do one or more of the following: (a) require you to immediately pay an amount equal to the sum of all remaining Monthly Rent due through the end of the Lease Term plus all Additional Charges which are accrued and unpaid or otherwise due through the Lease Term; (b) terminate this Agreement and/or any other agreements we have entered into with you; (c) require you to immediately pay us the value of the Vehicle or promptly return the Vehicle to us in good condition; (d) peacefully enter onto your premises and take possession of the Vehicle without liability to you for trespass or damages; (e) deactivate the Vehicle; and (f) use any other remedies available to us at law or in equity. You agree that any delay or failure by us to enforce this Agreement does not prevent us from enforcing our rights at a later time. You agree to pay all of our costs to enforce this Agreement including reasonable attorney's fees and the costs of repossessing, refurbishing, storing and selling the Vehicle. If we take possession of the Vehicle, we may sell or otherwise dispose of it at a public or private sale, and apply the proceeds (after deducting our disposition costs) to the amounts that are due to us. Our acceptance of any amount due hereunder which is less than payment in full of all amounts due and owing at that time shall not constitute a waiver of our right to receive payment in full.

If lessee shall default in the payment of any of the rental payments due under this lease or any other lease with us or our affiliates, including but not limited to RED ROCK CAPITAL, LLC, either now existing or in the future, or if lessee fails to perform any covenant, condition or obligation required to be performed by lessee under this lease agreement or any other lease agreement with us or our affiliates, including but not limited to

RED ROCK CAPITAL, LLC, either now existing or in the future, or if lessee becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefits of creditors, or if a petition for a receiver or under the Bankruptcy Act is filed by or against the lessee, lessor may declare the entire amount of rental payments accrued and to accrue over the term of this lease immediately due and payable. If the sum is not paid on demand, lessor shall have the right to take possession of the equipment and dispose of it in a commercially reasonable manner upon written notice to lessee or any intended disposition which will be deemed reasonably and properly given if mailed at least 10 days before such disposition, postage prepaid, to lessee at the address shown above. The rights and remedies contained in this lease agreement are cumulative and alternative and, in addition, lessor shall have all the rights and remedies granted by the Uniform Commercial Code or any other applicable law. Upon any such default, lessee, to the extent permitted by law, agrees to pay all costs of collection and enforcement of lessor's rights under this lease agreement, including the reasonable fees of an attorney who is not a salaried officer or employee of the lessor or its assigns. Furthermore, lessor may apply any equity in any other lease agreement that lessee may have with us or our affiliates, including but not limited to RED ROCK CAPITAL, LLC to any amount or deficiency due lessor hereunder. Waiver by lessor of any default shall not be a waiver of any other default.

9. Late Charges; Miscellaneous Fees and Charges. If any Monthly Rent or other amount due under this Agreement (including without limitation any Additional Charge) is not paid within 10 days after its due date, you agree to promptly pay a late charge of 5% of the past due amount. However, in no event shall these late charges exceed the maximum lawful charges.

You also agree to pay the following charges, if applicable: (a) NSF Fee - $25; (b) Temporary Date Change - $40; (c) Permanent Date Change - $100; (d) Administrative fee for Toll or Tax violation - $30; (e) Administrative fee for force placed insurance - $30; and (g) such other reasonable fees as we may assess from time to time for administrative or other actions required to be taken by us. Fees and charges may be modified in our sole reasonable discretion, without notice to you, from time to time as is necessary to cover our costs and expenses for such items.

10. Assignment. You may not sell, transfer, assign or sublease the Vehicle or this Agreement without our advance written consent, which we may withhold for any reason or no reason, and payment to us of a reasonable assignment processing fee. You agree that we may sell or assign this Agreement and any security interest without notice to you, and that our assignee shall have all of our rights under this Agreement. You agree that the rights of our assignee will not be subject to any claims, defenses or setoffs that you may have against us.

11. Governing Law.  . THIS AGREEMENT AND THE LEGAL RELATIONS OF THE PARTIES HERETO SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF IOWA, WITHOUT REGARD TO PRINCIPLES REGARDING THE CHOICE OF LAW. YOU HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF IOWA FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ITS OBLIGATIONS HEREUNDER, AND EXPRESSLY WAIVES ANY OBJECTIONS THAT IT MAY HAVE TO THE VENUE OF SUCH COURTS. YOU HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT.

12. Entire Agreement. This Agreement constitutes the entire agreement between you and us regarding the subject matter of this Agreement and it cannot be amended, modified or supplemented except as agreed by you and us in writing. We are authorized, without notice to you, to supply missing information or correct obvious errors in this Agreement. THIS AGREEMENT SUPERSEDES ANY AND ALL CONFLICTING TERMS OR PROVISIONS OF ANY PRIOR PROPOSALS, COMMITMENT LETTERS, TERM SHEETS OR OTHER AGREEMENTS OR UNDERSTANDINGS BETWEEN THE PARTIES. THIS AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF (i) ANY PRIOR WRITTEN OR ORAL AGREEMENTS OR

UNDERSTANDINGS, OR (ii) ANY CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS BETWEEN THE PARTIES, AND YOU ACKNOWLEDGE AND CERTIFY THAT NO SUCH ORAL OR WRITTEN AGREEMENTS OR UNDERSTANDINGS EXIST AS OF THE DATE OF THIS AGREEMENT.

13. Severability.  Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  All of our rights herein shall be in addition to and not in limitation of those provided by applicable law.

14. Notices.  Except as otherwise provided herein, all notices hereunder shall be in writing (including electronic and/or facsimile transmission) and shall be sent to the applicable party at its email or physical address shown on the signature page hereto or at such other address as such party may, by written notice received by the other parties, have designated as its address for such purpose.  Notices sent by email or facsimile transmission shall be deemed to have been given when sent; notices sent by mail shall be deemed to have been given three business days after the date when sent by registered or certified mail, postage prepaid; and notices sent by hand delivery or overnight courier service shall be deemed to have been given when received.

15. Adjustments.  You agree that Monthly Rent and Additional Charges of the Vehicle may be adjusted to reflect any change in Vehicle cost as a result of change orders, additions, returns, errors or other similar events.  In the event of any such adjustment, we will furnish you with written notice thereof.

16. Survival.  All of our rights set forth in this Agreement (including our right to indemnification) shall survive any expiration or termination of this Agreement.

17. Execution in Counterparts. This Agreement may be executed in counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement.  Receipt of an executed signature page to this Agreement by facsimile or other electronic transmission shall constitute effective delivery thereof.

18. Representations, Warranties & Covenants. You represent and warrant to and covenant to us that: (a) You have the form of business organization indicated above and is duly organized and existing in good standing under the laws of the state listed in the caption of this Agreement and is duly qualified to do business wherever necessary to carry on its present business and operations and to own its property; (b) this Agreement has been duly authorized by all necessary action on the part of you consistent with its form of organization, does not require any further shareholder or partner approval, does not require the approval of, or the giving notice to, any federal, state, local or foreign governmental authority and does not contravene any law binding on You or contravene any certificate or articles of incorporation or by-laws or partnership certificate or agreement, or any agreement, indenture, or other instrument to which you is a party or by which it may be bound; (c) this Agreement has been duly executed and delivered by authorized officers or partners of you and constitutes a legal, valid and binding obligation of you enforceable in accordance with its terms; (d) you have not and will not, directly or indirectly, create, incur or permit to exist any lien, encumbrance; mortgage, pledge, attachment or security interest on or with respect to the Vehicle or this Agreement (except those of persons claiming by, through or under us); (e) the Vehicle will be used solely in the conduct of your business and will remain in the location shown on the applicable schedule unless we otherwise agree in writing and you have completed all notifications, filings, recordings and other actions in such new location as we may reasonably request to protect our interest in the Vehicle; (f) there are no pending or threatened actions or proceedings before any court or administrative agency which materially adversely affect your financial condition or operations, and all credit, financial and other information provided by You or at your direction is, and all such information hereafter furnished will be, true, correct and complete in all material respects; and (g) we have not selected, manufactured or supplied the Vehicle to you and have acquired any Vehicle subject hereto solely in connection with this

Agreement and you have received and approved the terms of any purchase order or agreement with respect to the Vehicle.

19. Indemnity. You assume the risk of liability for, and hereby agrees to indemnify and hold safe and harmless, and covenants to defend, us, our employees, servants and agents from and against: (a) any and all liabilities, losses, damages, claims and expenses (including legal expenses of every kind and nature) arising out of the manufacture, purchase, shipment and delivery of the Vehicle to you, acceptance or rejection, ownership, titling, registration, leasing, possession, operation, use, return or other disposition of the Vehicle, including, without limitation, any liabilities that may arise from patent or latent defects in the Vehicle (whether or not discoverable by you), any claims based on absolute tort liability or warranty and any claims based on patent, trademark or copyright infringement; (b) any and all loss or damage of or to the Vehicle; and (c) any obligation or liability to the manufacturer or any supplier of the Vehicle arising under any purchase orders issued by or assigned to us.

20. Additional Security. For so long as any of your obligations shall remain outstanding under any agreement with us, you hereby grant to us a security interest in all of your rights in and to Vehicle subject to such agreement from time to time, to secure the prompt payment and performance when due (by reason of acceleration or otherwise) of each and every indebtedness, obligation or liability of you, or any affiliated person, firm, or entity controlling, controlled by, or under common control with you, owing to us, whether now existing or hereafter arising, including but not limited to all of such obligations under or in respect of any agreement.

21. Further Assurances. You shall promptly execute and deliver to us such further documents and take such further action as we may require in order to more effectively carry out the intent and purpose of this Agreement. You shall provide to us, within 120 days after the close of each of your fiscal years, and, upon our request, within 45 days of the end of each quarter of your fiscal year, a copy of its tax returns or other financial information, or if available, financial statements prepared in accordance with generally accepted accounting principles and, in the case of annual financial statements, audited by independent certified public accountants, and in the case of quarterly financial statements certified by your chief financial officer. You shall execute and deliver to us, upon our request any and. all schedules, forms and other reports and information as we may deem necessary or appropriate to respond to requirements or regulations imposed by any governmental authorities. You shall execute and deliver to us, upon our request such further and additional documents, instruments and assurances as we deem necessary (a) to acknowledge and confirm, for the benefit of us or any assignee or transferee of any of our rights, title and interests hereunder (an "Assignee"), all of the terms and conditions of all or any part of this Agreement and our or Assignee's rights with respect thereto, and your compliance with all of the terms and provisions hereof and (b) to preserve, protect and perfect our or Assignee's right, title or interest hereunder and in any Vehicle, including, without limitation, such UCC financing statements or amendments, corporate resolutions, certificates of compliance, notices of assignment or transfers of interests, and restatements and reaffirmations of your obligations and its representations and warranties with respect thereto as of the dates requested by us from time to time. In furtherance thereof, we may file or record this Agreement or a memorandum or a photocopy hereof (which for the purposes hereof shall be effective as a financing statement) so as to give notice to third parties, and you hereby appoint us as its attorney- in-fact to execute, sign, file and record UCC financing statements and other lien recordation documents with respect to the Vehicle, and you agree to pay or reimburse us for any filing, recording or stamp fees or taxes arising from any such filings.

22. Obligation Unconditional. This Agreement is a net Agreement and you hereby agree that you shall not be entitled to any abatement of rents or of any other amounts payable hereunder by you, and that your obligation to pay all rent and any other amounts owing hereunder shall be absolute and unconditional under all circumstances, including, without limitation, the following circumstances: (i) any claim by you to any right of set-off, counterclaim, recoupment, defense or other right which you may have against us, any seller or manufacturer of any Vehicle or anyone else for any reason whatsoever; (ii) the existence of any liens, encumbrances or rights of others whatsoever with respect to any Vehicle, whether or not resulting from claims against us not related to the

ownership of such Vehicle; or (iii) any other event or circumstances whatsoever. Each Rental Payment or other amount paid by you hereunder shall be final and you will not seek to recover all or any part of such payment from us for any reason whatsoever.

23. Disclosure of Fees.   Lessee acknowledges that Lessor will pay Lone Mountain Truck Leasing, LLC a fee for establishing this lease.

24. Mileage. The Vehicle shall be subject to the mileage plan and excess mileage charges set forth above (the "Mileage Fees").  Mileage Fees shall be payable on a semi-annual basis ("Measurement Period"), based on mileage for each Measurement Period.  The initial Measurement Period shall be the six months following acceptance of the Vehicle. Thereafter, each Measurement Period shall be six months following the last day of the preceding Measurement Period. Mileage must be reported within ten (10) days following the expiration of the related measurement period. All mileage reporting must be done at a Dealership or a Cresco Capital approved facility. If Lessee fails to report mileage within ten (10) days, such failure shall constitute an  Event of Default. Any Mileage Fees shall be payable within twenty (20) days following the expiration of the related Measurement Period. Late or non-payment of mileage fees shall constitute an Event of Default.  Any Mileage Fees paid will be credited  at the end of the Agreement and prior to payment of the Fair Market Value if you exercised the option to purchase the Vehicle.

25. Lease Acknowledgement: Lessee acknowledges that a Third Party Lender, and their respective successors, transferees and assigns ("Creditor") possesses an ownership or security interest in the Equipment subject to this lease (the "Lease"), and the right to proceeds, rental and other payments hereunder. Lessee also acknowledges and agrees that: (1) upon notice from Creditor it will make rental payments due under the Lease directly to Creditor; (2) until such notice has been received from Creditor, it will not make more than one rental payment due under the Lease in advance; and (3) it will not hold Creditor liable for the performance of any of Lessor's obligations under the Lease, nor will it withhold any rental payments from Creditor on account of Lessor's nonperformance. Lessee further acknowledges and agrees: (a) If the underlying agreement between Lessor and Creditor is a retail contract, then Lessee's option or right to purchase the Equipment shall be subject to Creditor obtaining a full payoff of the amounts due for the Equipment; and (b) If the underlying agreement between Lessor and Creditor is a lease agreement, then Lessee's option or right to purchase the Equipment shall be subject to Creditor's receipt of all monies due pursuant to the lease, including the purchase price for such Equipment.

[remainder of page intentionally left blank; signature page follows]

IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed as of the date(s) set forth below.

LESSOR:
CRESCO CAPITAL INC.

By:_____
Name: Chad Hoyme

Address for notices:
CRESCO CAPITAL INC.
200 Owen Parkway Circle
Carter Lake IA 51510
E-mail: accountmanagers@crescocapital.net

LESSEE:

By:_____
Name: Ulughbek Usmanaliyev

Address for notices:
403 Audubon Terrace
Philadelphia, PA 19116
E-mail: usmanaliyev75@mail.ru

**SCHEDULE A-1**
**TRAC CERTIFICATION**

Pursuant to section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended, Lessee hereby certifies under penalty of perjury that:

(1) Lessee intends that more than 50% of the use of the Vehicle will be in connection with Lessee's trade or business; and

(2) Lessee has been advised and understands and agrees that Lessee will not be treated as the owner of the Vehicle for federal income tax purposes.

LESSEE:
Ulughbek Usmanaliyev

By: _____

Name: Ulughbek Usmanaliyev

**SCHEDULE A-2**
**VEHICLE**

Description of Vehicle: 2017 Volvo 780
VIN of Vehicle: 4V4NC9EH0HN982728

Delivery Location: Nevada

LOCATION OF TRUCK FOLLOWING DELIVERY:

2750 Grand Ave
Philedelphia, PA 19116

## SCHEDULE C
## ACCEPTANCE CERTIFICATE

This Acceptance Certificate (this "Acceptance Certificate") is attached to and made a part of that certain Commercial Lease Agreement (the "Agreement"), by and between the undersigned parties dated . All capitalized terms used herein and not defined herein shall have the meanings set forth or referred to in the Agreement. To the extent the terms set forth in this Acceptance Certificate differ or conflict with any of the terms set forth in the Agreement, the terms set forth in this Acceptance Certificate shall control.

1. Lessee acknowledges and agrees that each item of Equipment set forth on Schedule A hereto (collectively, the "Equipment") is hereby unconditionally accepted by Lessee for all purposes under the Agreement at the locations specified in Schedule A-2 hereto, and hereby agrees to faithfully perform all of its obligations under the Agreement as of the date hereof (the "Acceptance Date"). Lessee hereby authorizes and directs Lessor to make payment to each vendor of the Equipment pursuant to such vendor's invoice or any purchase order, purchase agreement or supply contract with such vendor, receipt and approval of which are hereby reaffirmed by Lessee.

2. By its execution and delivery of this Acceptance Certificate, Lessee hereby reaffirms all of the representations, warranties and covenants contained in the Agreement as of the date hereof, and further represents and warrants to Lessor that no Event of Default, and no event or condition which with notice or the passage of time or both would constitute an Event of Default, has occurred and is continuing as of the date hereof. Lessee further certifies to Lessor that Lessee has selected the Vehicle and has received and approved the purchase order, purchase agreement or supply contract under which the Vehicle will be acquired for all purposes of the Lease.

3. Lessee hereby represents and warrants that: (a) the Equipment has been delivered and is in an operating condition and performing the operation for which it is intended to the satisfaction of the Lessee; and (b) if requested by Lessor, the Equipment has been marked or labeled evidencing the Lessor's interest therein.

Agreed and Accepted:

LESSOR:
CRESCO CAPITAL INC.

By:_____
Name: Chad Hoyme

LESSEE:
Ulughbek Usmanaliyev

By:_____
Name: Ulughbek Usmanaliyev

### SCHEDULE D
# LESSEE'S GUIDE

**IMPORTANT:** Only items put in writing as part of the Agreement are enforceable. Keep this form and the Agreement.

**Year of Vehicle: 2017**
**Make of Vehicle: Volvo**
**Model of Vehicle: 780**
**VIN of Vehicle: 4V4NC9EH0HN982728**

**WARRANTIES FOR THIS VEHICLE:**

# AS IS - NO WARRANTY

**THERE IS NO WARRANTY PROVIDED BY CRESCO CAPITAL INC.. YOU WILL PAY ALL COSTS FOR ANY REPAIRS. CRESCO CAPITAL INC. assumes no responsibility for any repairs regardless of any oral statements about the Vehicle. You may elect to purchase a third party warranty. If you purchase a third party warranty, you will need to contact that third party for warranty items.**

**Date: 06/22/2017**

**LESSEE:**

**By:** _____
**Name: Ulughbek Usmanaliyev**