**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CRESCO CAPITAL, INC., | |
| Plaintiff, | Civil Action No. 2:20-cv-00490-ER |
| v. | |
| ULUGHBEK USMANALIYEV; DEMIR TRANS, LLC; DURHAM INSURANCE GROUP, INC.; and UNITED FINANCIAL CASUALTY COMPANY, | |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

AND NOW, comes Defendant United Financial Casualty Company ("UFCC"), by and through its attorneys, Burns White LLC, and files this Brief in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF THE ARGUMENT

Where the insurance coverage sought by Cresco, whether as an additional insured or loss payee, is not afforded under the subject policy as the result of a policy change effectuated by the named insured, Cresco cannot create that insurance coverage based on inapplicable notice of cancellation provisions and/or a certificate of insurance that does not modify the policy or confer any rights, by its express language.

## BACKGROUND

In the instant matter, Cresco Capital, Inc., ("Cresco") seeks to obtain insurance coverage – and extracontractual damages – as it relates to a claim for property damage to a motor vehicle – a 2017 Volvo tractor bearing VIN No. 4V4NC93H0HN982728 ("Volvo") – pursuant to a policy that

was issued by UFCC – Policy No. 08189292-0 ("Policy") – as the result of a motor vehicle accident that occurred on March 3, 2019 ("Accident"). (See Compl., generally, ¶¶ 9, 19, 25, 26.)

The Complaint alleges that on or about June 22, 2017, defendant Ulughbek Usmanaliyev ("Mr. Usmanaliyev"), the owner and operator of defendant Demir Trans, LLC ("Demir"), leased the Volvo from Cresco pursuant to a Rental Agreement. (See Compl. at ¶¶ 2, 7, 9, Ex. A.)

The Complaint alleges that Mr. Usmanaliyev and Demir procured the Policy from UFCC, through defendant Durham Insurance Group, Inc. ("Durham"). (See Compl. at ¶ 18, 19.)

The Complaint alleges that, effective November 27, 2018, (i) the Volvo was added to the Policy as an "insured auto," (ii) Cresco was named as an "additional insured," and (iii) Cresco was listed as a loss payee. (See Compl. at ¶ 19.)

The Complaint alleges that on or about November 27, 2018, Durham and UFCC provided Cresco with a Certificate of Insurance, indicating the aforementioned policy changes, listing Cresco as a Certificate Holder, and stating that as an "additional insured" and loss payee, Cresco would "be notified in the event of a ***mid-term cancellation***."[1] (See Compl. at ¶ 21.)  This is the only alleged representation identified in the Complaint, despite the fact that it was subsequently mischaracterized as an alleged representation "that advance actual notice would be provided to Cresco if changes were made to the Policy before expiration of the Policy term." (See Compl. at ¶ 24.)

Nevertheless, the Complaint specifically alleges and acknowledges that the Volvo was not covered under the Policy at the time of the Accident, because it had been removed by Mr. Usmanaliyev, on behalf of UFCC's named insured, Demir. (See Compl. at ¶¶ 7, 18, 23.)

---

[1] UFCC notes that nowhere in the Complaint is it alleged that the Policy was cancelled, and there is no policy cancellation or "mid-term cancellation" at issue in this litigation.  (See Compl., generally.)

The Complaint alleges that the Volvo was involved in the Accident after it was no longer listed on the Policy and that UFCC denied coverage to Cresco on that basis. (See Compl. at ¶¶ 25-27.)

Based on these allegations, Cresco directs two untitled Counts of the Complaint at UFCC – Count III and Count IV. (See Compl., at pp. 6-7.)

The first of these counts – Count III – alleges that UFCC is estopped from denying coverage for the Volvo, despite the fact that it was not insured under the Policy at the time of the Accident, based on the statement concerning *mid-term cancellations* in the Certificate of Insurance.

The second count – Count IV – seeks to impose insurance bad faith liability pursuant to 42 Pa. C.S.A. § 8371, based on UFCC's alleged failure to provide the coverage that Cresco has attempted to create by estoppel.

## POLICY

Plaintiff did not attach (i) the Policy or (ii) the Certificates of Insurance (that allegedly modify the obligations under the Policy) to the Complaint. However, the Court may refer to these documents, as attached to UFCC's Motion to Dismiss, because the claims in the Complaint are not only based upon, but inextricably intertwined with, both the Policy and the Certificate. Mail Quip, Inc. v. Allstate Ins. Co., 388 F. Supp. 3d 433, 440 (E.D. Pa. 2019); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Corman v. Nationwide Life Ins. Co., 396 F. Supp. 3d 530, 535 (E.D. Pa. 2019); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006); Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

UFCC issued Commercial Auto Policy No. 08189292-0 to "Demir Trans LLC" at its location in Philadelphia, Pennsylvania. The Policy period was September 20, 2018 to September 20, 2019. As of the date of the Accident, the Policy was governed by Policy Declarations dated

March 1, 2019, and the policy forms and endorsements identified therein.  A copy of the Policy

Declarations and the forms and endorsements identified therein is attached to UFCC's Motion at

Exhibit 1.

The subject Volvo is not listed – or "scheduled" – on the Policy.  (Ex. 1, Declarations at

pp. at 2-4.)  As set forth above, Cresco has conceded as much.  Further, Cresco is not listed as a

loss payee with respect to any of the scheduled autos.  Rather, Cresco is only listed as an additional

insured with respect to the coverage that is otherwise afforded under the Policy. (See Ex. 1,

Declarations.)

There are no provisions in the Policy dictating notice to any entity with respect to any

coverage changes that are made by the named insured. (See Ex. 1, generally.)

The Policy contains the following provisions.

**A.**     **Insuring Agreement**

The Policy contains the following provisions relative to the property damage coverage

sought by Cresco:

PART II - DAMAGE TO YOUR AUTO

INSURING AGREEMENT – COLLISION COVERAGE

Subject to the Limits of Liability, if you pay the premium for Collision
Coverage, we will pay for loss to your insured auto and its permanently
attached equipment when it collides with another object or overturns.

≡ ≡ ≡

ADDITIONAL COVERAGE

≡ ≡ ≡

2.   Coverage for Temporary Substitute Autos

If a temporary substitute auto is involved in a loss, we will
provide the same coverage and deductible that would have

4

applied to the insured auto for which it is a substitute. The most we will pay for loss to a temporary substitute auto is the lesser of the Actual Cash Value at the time of loss or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

≡ ≡ ≡

(See Ex. 1.)

## B.    **Definitions**

The Policy contains the following provisions defining the vehicles that qualify as insured autos for purposes of the property damage coverage sought by Cresco:

<u>GENERAL DEFINITIONS</u>

≡ ≡ ≡

5.    "Insured auto" or "your insured auto" means:

a.    Any auto specifically described on the declarations page; or

b.    An additional auto for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date you become the owner if:

(i)  you acquire the auto during the policy period shown on the declarations page;

(ii) we insure all autos owned by you that are used in your business;

(iii)no other insurance policy provides coverage for that auto; and

(iv)you tell us within 30 days after you acquire it that you want us to cover it for that coverage.

If you add any coverage, increase your limits or make any other changes to this policy during the 30 day period after you acquire an additional auto, these changes to your policy will not become effective until after you ask us to add the coverage, increase your limits or make such changes for the

additional auto. We may charge premium for the additional auto from the date you acquire the auto.

≡ ≡ ≡

With respect to Part II - Damage To Your Auto, if we provide coverage for an auto you acquire in addition to any auto specifically described on the declarations page, and the additional auto is:

(i) a private passenger auto, we will provide the broadest coverage we provide for any auto shown on the declarations page; or

(ii) any auto other than a private passenger auto, and you have purchased Physical Damage coverage for at least one auto other than a private passenger auto, we will provide the broadest coverage for which the newly acquired auto is eligible.

c. Any replacement auto on the date you become the owner if:

(i) you acquire the auto during the policy period shown on the declarations page;

(ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced au- to or due to mechanical breakdown of, deterioration of, or loss to the re- placed auto that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that auto.

If we provide coverage for a replacement auto, we will provide the same coverage for the replacement auto as we provide for the replaced auto. We will provide that coverage for a period of 30 days after you become the owner of such replacement auto. We will not provide any coverage after this 30 day period unless within this period you ask us to insure the replacement auto. If you add any coverage, increase your limits or make any other changes to your policy during this 30 day period, these changes to your policy will not become effective until after you ask us to add the coverage, increase your limits or make such changes.

≡ ≡ ≡

14. "Temporary substitute auto" means any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

≡ ≡ ≡

(See Ex. 1.)

### C.    <u>Cancellation Provisions – Notice</u>

The cancellation provisions of the Policy are set forth in a Pennsylvania-specific "Cancellation and Nonrenewal Endorsement," written on Form No. 4852 PA (10/04).  (See Ex. 1.)[2]  The cancellation provisions, on their face, address the cancellation of the Policy as required by Pennsylvania law. (See Ex. 1.) There are no provisions dictating or requiring notice to any entity other than the named insured. (See Ex. 1.)

The only provisions in the Policy concerning the Loss Payee, are as follows.

LOSS PAYEE AGREEMENT

We will pay the Loss Payee named in the policy for loss to your insured auto, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless the loss results from fraudulent acts or omissions on your part.

Cancellation ends this agreement as to the Loss Payee's interest.

If we make any payment to the Loss Payee, we will obtain the Loss Payee's rights against any other party.

Again, there is no obligation to provide notice to any loss payee. (See Ex. 1.)

---

[2] The terms and conditions of the "Cancellation and Nonrenewal Endorsement" have not been replicated herein due to their volume.

**D.**    **Certificate of Insurance**

UFCC notes that Cresco has failed to attach any alleged Certificate of Insurance to the Complaint. While the approximate timing of a particular Certificate was alleged – on or about November 27, 2018 – UFCC has identified no such document for inclusion herein. Rather, upon information and belief, based on the quoted language from the alleged Certificate, Cresco is referring to one of two Certificates – one dated prior to the Accident, February 6, 2019, the other dated after the Accident, September 4, 2019. The Certificates are attached to UFCC's Motion at Exhibit 2.

The full text of the "cancellation" statement in both of these Certificates, which appears to be directed to the named insured, states: "Please be advised that additional insureds and lienholders will be notified in the event of a mid-term cancellation." (See Ex. 2.) The Certificates also contain the following disclaimer:

> This document certifies that insurance policies identified below have been issued by the designated insurer to the insured named above for the period(s) indicated. This certificate is issued for information purposes only. It confers no rights upon the certificate holder and does not change, alter, modify, or extend the coverages afforded by the policies listed below. The coverages afforded by the policies listed below are subject to all the terms, exclusions, limitations, endorsements, and conditions of these policies.

(See Ex. 2.)

## ARGUMENT

The United States District Court for the Eastern District of Pennsylvania has recently reiterated the standard relative to the nature of the allegations that must be pled in order to avoid dismissal.

> In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (*quoting* Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Id. at 234 (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 540, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. (explaining that determining "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (*citing* Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Shetayh v. State Farm Fire & Cas. Co., 2020 WL 1074709, at *2 (E.D. Pa. Mar. 6, 2020).

Under Rule 12(b)(6), the Court must decide whether, even if the plaintiff could prove all of the allegations in the complaint, plaintiff would be able to prevail. A complaint may be dismissed for failure to state a claim where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle them to relief. Connelly v. Gibson, 355 U.S. 41, 45-46 (1957); Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

Noticeably absent from the instant Complaint, which seeks both insurance coverage and extracontractual damages pursuant to a policy of insurance, is a claim for breach of the insurance contract. This is consistent with (i) Cresco's allegations conceding that the subject Volvo was not insured under the Policy at the time of the Accident and (ii) the terms of the Policy, by which an unlisted, non-scheduled auto that had allegedly been leased to Demir for more than a year at the time of the Accident, could not qualify as an "insured auto."

Instead, Cresco attempts to work an estoppel – the standard for which is discussed in detail below – in order to create insurance coverage that did not exist under the Policy. Cresco bases the alleged estoppel on a failure to provide notice of a ***policy change*** effectuated by the ***named insured***. However, Cresco relies on alleged statements regarding notice of policy ***cancellation*** that are not contained not in the Policy, but in a Certificate of Insurance. It is telling that Plaintiff has failed to specifically identify or attach the alleged Certificates of Insurance, which as set forth above, contain disclaimers that are fatal to its claims.

The ***cancellation*** provisions are simply inapplicable to the ***policy change*** at issue, such that Cresco's claims are implausible, and should be dismissed.

In addition, the statements that Cresco relies upon are legally insufficient to (i) modify the terms of the Policy, (ii) require notice of the alleged Policy change, and/or (iii) require coverage.

From this, Plaintiff seeks to extrapolate insurance bad faith from the alleged estoppel, while expressly alleging facts that establish the reasonable basis for UFCC's claim determination – the Volvo was not insured under the Policy at the time of the Accident.

If there are representations other than the incomplete, inapplicable, and ineffective statements regarding cancellation upon which Cresco relies, Twobly requires that the same be alleged. Kamara v. Columbia Home Loans, LLC, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009). Specifically, Cresco must allege the nature of the representations, to whom they were made, and when, as would be required to make its claims plausible. Johnson v. Dunkin' Donuts Franchising L.L.C., 2012 WL 1828028, at *12 (W.D. Pa. May 18, 2012), *citing* Vigilante v. Statharos, 2009 WL 398781, at *2 (E.D. Pa. Feb.16, 2009), *quoting* Fried v. Fisher, 196 A. 39, 43 (Pa.1938). Here, that has not occurred.

**A.    The Named Insured Changed the Coverage Afforded by the Policy –
There was No Cancellation, Such that the Cancellation Provisions
Upon Which Cresco Relies Create No Notice Requirement and Are of
<u>No Consequence</u>.**

Count III of Plaintiff's Complaint is expressly predicated on the alleged statement
contained in the alleged Certificate of Insurance to the effect that UFCC would "provide notice to
Cresco in the event of a mid-term cancellation" and that UFCC "failed to provide notice to Cresco
of the mid-term cancellation."  Cresco has both cropped and supplemented the statement as it
appears in the Certificates of Insurance, as set forth above.  Nonetheless, the statement relied upon
refers to the ***mid-term cancellation*** of the insurance policy – not the modification of coverage to
remove one of many vehicles identified therein.

Where Cresco attempts to modify UFCC's obligations under the Policy based on a
statement regarding cancellation in a Certificate of Insurance, the provisions should be read and
interpreted consistent with the principles governing policy construction – i.e., the provisions
should be read in *pari materia*.  <u>Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.</u>, 941 A.2d
706, 715 (Pa. Super. Ct. 2007). As such, cancellation cannot have two distinct meanings in the
Policy and Certificate of Insurance.

Policy cancellation and, in particular, the mid-term cancellation of a policy of automobile
insurance, is regulated by statute.  <u>See</u> 40 Pa. Stat. Ann. § 991.2001, *et seq.*; <u>see</u> <u>also</u> <u>Robbins v.
Ins. Dep't</u>, 11 A.3d 1048, 1051 (Pa. Commw. Ct. 2010) ("The conduct of insurers in their
cancellation of automobile insurance policies and in their underwriting decisions to refuse to write
policies or to refuse to renew policies is regulated by Pennsylvania statute."), *citing* <u>Beitler v.
Department of Transportation</u>, 811 A.2d 30, 34 (Pa. Commw. Ct. 2002), *appeal denied,* 839 A.2d
353 (Pa. 2003) (*superseded on other grounds*).  "An insurer may cancel an automobile policy in

accordance with the statutory provisions." State Farm Mut. Auto. Ins. Co. v. Com., 124 A.3d 775, 777 (Pa. Commw. Ct. 2015).

As set forth above, the Policy incorporates a Pennsylvania-specific Endorsement that dictates the rights and obligations of the parties regarding any alleged cancellation, including mid-term cancellations – i.e., the restrictions on mid-term cancellations after the initial 60 day period. See Ex. 1, at Cancellation and Nonrenewal Endorsement; Erie Ins. Exch. v. Lake, 671 A.2d 681, 685 (Pa. 1996) ("After the 60 day period only the prospective remedies as set forth in the Act may be utilized to cancel an automobile insurance policy.")

Notably, under the Cancellation Endorsement, no notice is required in the event that the insured cancels the Policy. Notice is only required in the event that UFCC elected to cancel the Policy, and even then, the Policy only requires notice to the "named insured" – Demir. Notably, that did not happen here, as neither Demir nor UFCC effectuated a mid-term cancellation. Where a policy has not been cancelled, provisions regulating cancellation are inapplicable. Robbins, 11 A.3d at 1051.

Further, where a loss payee provision such as the one contained in the Policy does not provide for notice of cancellation to the loss payee, there is no obligation – contractual or otherwise – to provide such notice. Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 433 (3d Cir. 2007) ("Here, it is plain from the language of the contract that the loss payee was not owed any notice when the insured canceled the policy.") (applying Pennsylvania law); see also First Nat. Bank of W. Pennsylvania v. Hartford Ins. Co., 1 Pa. D. & C.4th 285, 287 (Com. Pl. 1988) ("an insurer cannot cancel or refuse to renew a policy of automobile insurance unless the insurer serves upon the *insured* a written notice of the cancellation of the policy or a refusal to renew the insurance contract … this court cannot expand the word 'insured' as utilized in the statute to

include a 'loss payee.'"); <u>Chrysler Credit Corp. v. Liberty Mut. Ins. Co.</u>, 483 So. 2d 1140 (La. Ct. App. 1986) (Valid cancellation of an automobile policy by an insured did not impose a duty upon the insurer to notify the loss payee of such cancellation.).

Furthermore, it has been recognized that "[i]n the insurance industry, when there is more than one named insured on a particular policy, that particular policy is almost always referenced by the first named insured." <u>Great N. Ins. Co. v. Greenwich Ins. Co.</u>, 2008 WL 4616713, at *2 (W.D. Pa. Oct. 16, 2008), <i>aff'd</i> 372 F. App'x 253 (3d Cir. 2010). "The first insured has a responsibility for speaking on behalf of all other additional insureds or loss payees that are attached to the policy." <u>Great N. Ins. Co.</u>, 2008 WL 4616713, at *2. Even if it is the insurer that "desires to cancel or terminate the policy, notice to the first named insured is sufficient and payment of premiums or refund of premiums is made to the first named insured and not allocated by the insurer among additional insureds." <u>Id</u>.

Here, consistent with the foregoing, there simply was no cancellation, and certainly no cancellation by UFCC requiring notice. As such, neither (i) the cancellation provisions in the Policy nor (ii) any statement regarding notice of cancellation has any relevance.

**B.  The Statement in the Certificate of Insurance Upon Which Cresco Relies Does not Give Rise to Any Rights or Obligations, Does not Amend UFCC's Obligations Under the Policy, and Cannot Create Coverage by Estoppel.**

As set forth above, the claim for coverage by estoppel is predicated on the partial statement set forth in the alleged Certificate of Insurance. As a general matter, "[i]n Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed." <u>Wasilko v. Home Mut. Cas. Co.</u>, 232 A.2d 60, 63 (Pa. Super. Ct. 1967), <i>citing</i> <u>Donovan v. New York Casualty Company</u>, 94 A.2d 570 (Pa. 1953), <u>Anotone v. New Amsterdam Casualty Company</u>, 6 A.2d 566 (Pa. 1939).

Further, under Pennsylvania law, a Certificate of Insurance containing disclaimers such as those set forth above indicting that the certificate "is issued for information purposes only," "confers no rights upon the certificate holder,"  and "does not change, alter, modify, or extend the coverages afforded by the policies listed," cannot confer rights or modify the policy.  Rather, as the Certificate states, the coverages afforded by the policy listed are subject to all the terms, exclusions, limitations, endorsements, and conditions of the policy. Bedwell Co. v. D. Allen Bros., 2006 WL 3692592, at *4 (Pa. Com. Pl. Dec. 6, 2006); see also In re Asousa P'ship, 2004 WL 1043149, at *5 (Bankr. E.D. Pa. Apr. 26, 2004).

As set forth above, the notice requirement that Cresco attempts to create does not exist under the Policy, and the statement in the Certificate – which appears to be directed to the named insured – neither modifies the Policy obligations nor confers any rights on the certificate holder.

As it specifically pertains to the attempt to use the Certificate to work an estoppel, "[u]nder Pennsylvania law, 'promissory estoppel is appropriate where '(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise.'"" Admiral Ins. Co. v. Liberty Mut. Fire Ins. Co., 2019 WL 3890318, at *6 (E.D. Pa. Aug. 19, 2019), *appeal dismissed sub nom.* 2020 WL 1330691 (3d Cir. Jan. 28, 2020), *quoting* W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut, 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017), *quoting* Carlson v. Arnot—Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990).

"'In the insurance context, 'there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon.'"" Admiral Ins. Co., 2019 WL 3890318, at *7, *quoting* Nationwide Prop. & Cas. Ins. Co. v. Shearer, 650 F. App'x 115, 117 (3d Cir. 2016),

14

*citing* Titan Indem. Co. v. Cameron, 2002 WL 242346, at *2 (E.D. Pa. Feb. 19, 2002). "Accordingly, an insured must show '(1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts.'" Id.

In Admiral Ins. Co., the United States District Court for the Eastern District of Pennsylvania found it unreasonable to rely on anything less than a full policy – i.e., certificates of insurance containing disclaimers and/or policy declarations. Admiral Ins. Co., 2019 WL 3890318, at *6-7.

Similarly, in Quincy Mut. Fire Ins. Co. v. Imperium Ins., 636 F. App'x 602 (3d Cir. 2016), the United States District Court for the Western District of Pennsylvania and Court of Appeals for the Third Circuit considered whether a carrier could be estopped from denying coverage to an additional insured based on a "statement in a certificate of insurance." Quincy Mut. Fire Ins. Co., 636 F. App'x at 606. On appeal, the Third Circuit recognized that "[u]nder … Pennsylvania … law, to establish coverage by estoppel, the insured must have reasonably and detrimentally relied on a misstatement by the insurer that coverage existed." Id., *citing* McDonald v. Keystone Ins. Co., 459 A.2d 1292, 1295 (Pa. Super. Ct. 1983). The Third Circuit went on to rule that "[t]he district court correctly determined that no reasonable jury could find that [the additional insured] reasonably relied on the certificate of insurance. It is unreasonable to rely on a certificate of insurance that explicitly disclaims conferring any rights." Id., *citing* Couch on Insurance § 242:33, Via Net v. TIG Ins. Co., 211 S.W.3d 310, 314 (Tex.2006) (per curiam) ("Given the numerous limitations and exclusions that often encumber such policies, those who take such certificates at face value do so at their own risk."), Ala. Elec. Coop., Inc. v. Bailey's Constr.

Co., 950 So.2d 280, 286 (Ala.2006) (finding reliance on certificate of insurance unreasonable as a matter of law); Greater N.Y. Mut. Ins. Co. v. White Knight Restoration, Ltd., 7 A.D.3d 292, 776 N.Y.S.2d 257, 258 (2004) (finding, in context of a fraud claim, no reasonable reliance on certificates of insurance "in the face of their disclaimer language").

As such, where Cresco claims to have relied on a partial statement of the text contained in a Certificate of Insurance that expressly states that it confers no rights, not only is the Certificate without effect as a matter of law, Cresco could not have reasonably relied on the same, such that estoppel cannot create coverage that did not otherwise exist.  In addition, if Demir had a contractual obligation to obtain the coverage at issue, and failed to maintain that coverage, Cresco maintains a contractual claim against Demir such that no injustice or prejudice results for which UFCC should be responsible. See Borough of Wilkinsburg v. Trumbull-Denton Joint Venture, 568 A.2d 1325 (Pa. Super. Ct. 1990).

**C.     Plaintiff Cannot Maintain a Claim for Insurance Bad Faith Where the Reasonable Basis for UFCC's Denial of Coverage is Alleged on the Face of the Complaint and the Denial was Reasonable Under the Law.**

For bad faith liability to be imposed under Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371, the insured must be able to present clear and convincing evidence that the insurer (i) did not have a reasonable basis for denying benefits under the policy and (ii) knew of or recklessly disregarded its lack of reasonable basis in denying the claim.  Rancosky v. Wash. Natl. Ins. Co., 170 A.3d 364 (Pa. 2017); see also Shetayh v. State Farm Fire & Cas. Co., 2020 WL 1074709, at *2 (E.D. Pa. Mar. 6, 2020), *quoting* Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997), *citing* Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), *appeal denied* 659 A.2d 560 (Pa. 1995). "'Although the insurer's conduct need not be fraudulent, 'mere negligence or bad judgment is not bad faith.''" Shetayh, 2020 WL 1074709, at *2, *quoting* Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005),

*quoting* Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004). "A recovery for

bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation."

Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999), *citing* MGA Ins.

Co. v. Bakos, 699 A.2d 751, 754 (Pa. Super. 1997) and Terletsky, *supra*.

Here, Cresco specifically alleges that coverage was denied, because the named insured had

removed the subject Volvo from the Policy prior to the Accident. (Compl. at ¶¶ 22, 23, 26.) As

such, the reasonable basis for UFCC's denial of coverage is apparent on the face of the Complaint,

and pursuant to Twombly, Count IV of Plaintiff's Complaint should be dismissed.

But further, the only basis for Cresco's claim for coverage is the legally and factually

insufficient attempt to create coverage by estoppel. (Compl. at Count III, IV.) At most, there is a

disagreement as to whether that alleged estoppel could create coverage against the weight of

Pennsylvania law.

"Under Pennsylvania law, the presence or absence of bad faith does not turn on the legal

correctness of the basis for an insurer's denial of an insured's claim." Employers Mut. Cas. Co. v.

Loos, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007), *citing* Jung v. Nationwide Mutual Fire Ins. Co.,

949 F.Supp. 353, 359-60 n. 7 (E.D. Pa. 1997). "'Bad faith cannot be found where the insurer's

conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and

the law.'" Sayles v. Allstate Ins. Co., 260 F. Supp. 3d 427, 448 (M.D. Pa. 2017), *quoting* Bostick,

56 F.Supp.2d at 587, and *citing* Aumen v. Nationwide Mut. Ins. Co., 2011 WL 1120414, at *6

(M.D. Pa. Mar. 8, 2011) ("[R]egardless of whether Defendant knew of such case law at the time it

made its initial determination to deny coverage or whether such holding supported its position …

the undeniable conclusion is that its interpretation was reasonable."), and Loos, 476 F.Supp.2d at

496, *quoting* Brown, 860 A.2d at 501 ("Pennsylvania law does not recognize bad faith where an

insurer makes 'a reasonable legal conclusion based on an area of the law that is uncertain or in flux.'")

Here, as discussed above, Cresco's estoppel claim is factually and legally without merit, such that UFCC's coverage position was correct and bad faith cannot lie. However, even if there could be any dispute as to whether there was merit to Cresco's claim, there is more than a sufficient legal and Policy basis for UFCC's denial of coverage, such that its denial was reasonable and insufficient to give rise to a claim for bad faith. Accordingly, pursuant to the precedent established in Twombly, Plaintiff's bad faith claim in Count IV of the Complaint should be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant UFCC respectfully requests that the Court enter an Order consistent with the attached Granting UFCC's Motion to Dismiss, dismissing Counts III and IV of the Complaint, along with any and all other claims that may be asserted therein against UFCC, with prejudice.

Respectfully submitted,

BURNS WHITE LLC

By:  /s/ *Daniel J. Twilla*
     Daniel J. Twilla
     Burns White Center
     48 26th Street
     Pittsburgh, PA 15222
     *Counsel for Defendant United*
     *Financial Casualty Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of March, 2020, a true and correct copy of the foregoing

Brief in Support of Motion to Dismiss was served on counsel of record via the Court's ECF system:

Michael F. Nerone
PION, NERONE, GIRMAN,
WINSLOW & SMITH, P.C.
1500 One Gateway Center
420 Fort Duquesne Boulevard
Pittsburgh, PA 15222
*Counsel for Plaintiff*

Matthew R. Major
Wilson Elser Moskowitz
Edelman Dicker
200 Campas Drive
Florham Park, NJ 07932
*Counsel for Durham Insurance Group*

*By First Class Mail:*

Demir Trans, LLC
403 Audubon Terrace
Philadelphia, PA 19116

 */s/ Daniel J. Twilla*
Daniel J. Twilla